UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| LUIS OLAGE, | 4:24-CV-04135-LLP |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S FIRST MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS, DENYING PLAINTIFF'S OTHER VARIOUS MOTIONS, AND 1915A SCREENING |
| LAWRENCE COUNTY, County at State of South Dakota in individual and official capacity; KELLIE WASKO, Secretary at Department of Corrections in individual and official capacity; ALEX REYES, Warden at Mike Durfee State Prison in individual and official capacity; DEB EILERS, Unit Captain at Mike Durfee State Prison in individual and official capacity; TAMMY DOYLE, Corrections Specialist at Mike Durfee State Prison in individual and official capacity; CORY NELSON, Behavioral Health Coordinator at Mike Durfee State Prison in individual and official capacity; JOE CARDA, Mental Health Counselor at Mike Durfee State Prison, in individual and official capacity; JEFFREY NIXON, Associate Warden at Mike Durfee State Prison in individual and official capacity; TROY PONTO, Associate Warden at South Dakota State Penitentiary in individual and official capacity; TABITHA BENTING, Associate Warden at South Dakota State Penitentiary in individual and official capacity; CORPORAL FRASER, Corporal at South Dakota State Penitentiary in individual and official capacity; CORPORAL WILLIAMS, Corporal at South Dakota State Penitentiary in individual and official capacity; JESSICA COOK, Associate Warden at South Dakota State Prisons in individual and official capacity; LIEUTENANT FEDT, Lieutenant at South Dakota State Penitentiary in individual and official capacity; C.O. SCOTT, Correctional Officer at South Dakota State Penitentiary in individual and official capacity; BENJAMIN MOORE, Correctional Officer at South Dakota | |

State Penitentiary in individual and official
capacity; C.O. MEYERS, Correctional officer at
Mike Durfee State Prison in individual and
official capacity; CORPORAL FUNK, Corporal
at Mike Durfee State Prison in individual and
official capacity; AMBER PIRRAGLIA,
Director of Prisons at South Dakota Department
of Corrections in individual and official
capacity; and DAN SASTAK, Unit Captain at
Mike Durfee State Prison in individual and
official capacity,

Defendants.

Plaintiff, Luis Olage, an inmate at the Mike Durfee State Prison, filed a pro se lawsuit under 42 U.S.C. § 1983. Doc. 1. Olage filed a motion for leave to proceed in forma pauperis and provided a certified copy of his prisoner trust account report. Docs. 2, 3. He filed an amended complaint and three motions for leave to file a supplemental complaint. Docs. 7, 9-1, 15, 20. He also moves for the appointment of counsel, Doc. 12, and for a temporary restraining order, Doc. 16.

## MOTION TO PROCEED IN FORMA PAUPERIS

Under the Prison Litigation Reform Act (PLRA), a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). The Court may, however, accept partial payment of the initial filing fee where appropriate. Therefore, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan." *Henderson v. Norris*, 129 F.3d 481, 483 (8th Cir. 1997) (quoting *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of:

    (A)    the average monthly deposits to the prisoner's account; or

    (B)    the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Olage filed a motion to proceed in forma pauperis. Doc. 2. His prisoner trust account report shows his average monthly deposits to be $57.00 and his average monthly balance as $0.03. Doc. 3 at 1. Because Olage would owe more than his current balance as his initial partial filing fee, the Court grants Olage leave to proceed in forma pauperis and waives his initial partial filing fee. *See* 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."). Because Olage has been granted leave to proceed in forma pauperis, his second motion for leave to proceed in forma pauperis, Doc. 20-1, is denied as moot.

      In order to pay his filing fee, Olage must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the Court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). The installments will be collected pursuant to this procedure.

      The Clerk of Court will send a copy of this order to the appropriate financial official at plaintiff's institution. Olage will remain responsible for the entire filing fee, as long as he is a prisoner, even if the case is dismissed at some later time. *See In re Tyler*, 110 F.3d 528, 529–30 (8th Cir. 1997).

## MOTIONS TO SUPPLEMENT COMPLAINT

Olage filed three motions to file a supplemental pleading. Docs. 7, 9-1, 20. Although Olage labeled Docs. 7 and 20 as motions to supplement, they appear to be both a motion to supplement his complaint and a motion to amend his complaint. Amended pleadings "relate to matters that occurred prior to the filing of the original pleading and entirely replace the earlier pleading[,]" but supplemental pleadings "deal with events subsequent to the pleading to be altered and represent additions to or continuations of the earlier pleadings." 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1504 (3d ed. 2024). A party may amend its pleading once as a matter of course within twenty-one days of serving it or if a responsive pleading is required within twenty-one days after service of the responsive pleading. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Under Federal Rule of Civil Procedure 15(d), a court may on motion "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). When determining whether to grant leave to amend, courts consider (1) undue delay, (2) bad faith or dilatory motive, (3) undue prejudice to opposing party by allowing amendment, and (4) futility of amendment. *Bell v. Allstate Life. Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).

On August 9, 2024, Olage filed a motion for leave to file a supplemental pleading, which included sixteen additional defendants and twelve additional claims. *See* Doc. 7-1. On August 29, 2024, Olage filed an amended complaint including all additional defendants and all additional claims included in Doc. 7-1. *See* Doc. 15. It is well-established that an amended complaint supersedes an original complaint and renders the original complaint without legal

effect. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) (citing *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000)). Because the claims alleged in Doc. 7-1 are already included in Olage's amended complaint, Doc. 15, it would be futile to allow him to supplement his complaint as requested in Doc. 7. Thus, Olage's first motion to file a supplemental pleading, Doc. 7, is denied as moot.

Olage filed a second supplement, Doc. 9, on August 19, 2024. He filed his amended complaint on August 29, 2024. Doc. 15. Generally, the filing of an amended complaint replaces the original complaint and supplements to the complaint. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d at 928. To the extent that any of his claims alleged in Doc. 9 are not alleged in his amended complaint, this Court deems those claims as abandoned. Thus, Olage's motion to supplement, Doc. 9-1, is denied.

Olage's motion to supplement his complaint, Doc. 20, includes a proposed supplemental complaint that is nearly identical to his amended complaint, Doc. 15. The only noticeable changes are that Olage removed a blank page, included a second motion for leave to proceed in forma pauperis and a civil cover sheet, and added a request for relief of "appropriate corrective remedial action concerning judicial misconduct." Doc. 20-1 at 26. Olage's motion would be more accurately construed as a motion to amend his amended complaint because he has not described any events subsequent to his pleadings. *See generally id.*

Regardless of how this Court construes Olage's motion, his changes do not warrant granting leave to amend or supplement his complaint. His removal of a blank page is a non-substantive change that does not affect his claims. The addition of a civil cover sheet does not affect the substance of the complaint because the cover sheet explicitly states that "the information contained herein neither replace[s] nor supplement[s] the filing and service of

5

pleadings or other papers as required by law[.]" *Id.* at 29; *see also Favors v. Coughlin*, 877 F.2d 219, 220 (2d Cir. 1989) (per curiam) ("The civil cover sheet, of course, is merely an administrative aid to the court clerk, and is therefore not typically considered part of a litigant's pleading papers."); Fed. R. Civ. P. 7 (defining pleading to include the complaint but not the civil cover sheet). The addition of a second motion for leave to proceed in forma pauperis also does not merit granting leave to amend or supplement; the second motion for leave to proceed in forma pauperis is denied as moot because this Court granted Olage's first motion for leave to proceed in forma pauperis. *See supra* at 3.

The only substantive change that Olage made is adding a request for "appropriate corrective remedial action concerning judicial misconduct." Doc. 20-1 at 26. However, he simply appears to be requesting that he be permitted to later seek corrective remedies on appeal due to the undersigned's decision to not recuse himself when Olage had provided no supported reason for the undersigned to do so. Such a request is not appropriate injunctive relief at this stage, and if Olage intends to file an appeal to seek corrective remedial action, he must comply with the Federal Rules of Appellate Procedure. To the extent that Olage's request for "appropriate corrective remedial action concerning judicial misconduct" could be construed as a request for relief for claims related to his state criminal case, *id.*, such § 1983 claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). *See Heck*, 515 U.S. at 486–87 (holding that "in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a plaintiff must show that the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into

question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254"); *Preiser*, 411 U.S. at 500 (holding that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus"). Because Olage's changes are non-substantive or lack merit, it would be futile to permit him leave to amend or supplement his complaint. Thus, Olage's motion for supplemental complaint, Doc. 20, is denied. This Court will screen Olage's amended complaint, Doc. 15.

## 1915A SCREENING

### I.    Factual Background as Alleged by Olage

Olage sues Lawrence County, South Dakota; South Dakota Department of Corrections (DOC) Secretary Kellie Wasko; MDSP Warden Alex Reyes; MDSP Unit Captain Deb Eilers; MDSP Corrections Specialist Tammy Doyle; MDSP Behavioral Health Coordinator Cory Nelson; MDSP Mental Health Counselor Joe Carda; MDSP Associate Warden Jeffrey Nixon; South Dakota State Penitentiary (SDSP) Associate Warden Troy Ponto; SDSP Associate Warden Tabitha Benting; SDSP Corporal Fraser; SDSP Corporal Williams; South Dakota State Prisons Associate Warden Jessica Cook[1]; SDSP Lieutenant Fedt; SDSP Correctional Officer Scott; SDSP Correctional Officer Benjamin Moore; MDSP Correctional Officer Meyers; MDSP Corporal Funk; DOC Director of Prisons Amber Pirraglia; and MDSP Unit Captain Dan Sastak. Doc. 15 at 2–6.

---

[1] Olage claims that Cook is the associate warden at South Dakota State Prisons. Doc. 15 at 5. It is unclear if he alleges that she is employed at the MDSP, the SDSP, or the DOC generally. *Id.* For the purposes of screening, this Court assumes that Cook still has control over Olage.

## A.    Excessive Force

On February 5, 2015, Olage requested a roll of toilet paper, but Fraser denied his request and told him "to use his hand and wipe[.]" *Id.* at 19. Olage told Fraser that "she was producing inappropriate behavior and conduct to say such things and [he] wanted toilet paper[.]" *Id.* Fraser called Moore, Scott, and Williams claiming that Olage was aggressive. *Id.* Olage put his hands behind his back, and the officers held him on the ground while in handcuffs. *Id.* Williams used a choke-hold and pulled Olage's head back with extreme pressure, which caused Olage to have difficulty breathing and fall unconscious. *Id.* at 19–20. Fraser, Moore, and Scott held Olage's arms and legs. *Id.* Olage claims that Ponto and Fedt allowed and were aware of excessive force applications. *Id.* Olage alleges that Defendants violated his rights under the Fourth and Eighth Amendments. *Id.* at 19–21. Olage began to experience mental health injuries based on the attack after his psychotropic medication was changed on July 26, 2024. *Id.* at 21.

## B.    Mental Health Treatment

In February 2016, Ponto, Cook, and medical staff determined that Olage should take 400 mg of Wellbutrin once per day in the morning. *Id.* at 15. Olage did not have any changes to his mental health treatment plan for eight years. *Id.* On July 26, 2024, Eilers informed Olage that his dosage had changed for his prescription of Wellbutrin so that he would receive 200 mg of Wellbutrin in the morning and 200 mg in the evening. *Id.* at 15–16. Olage alleges that Eilers, Nelson, Nixon, Reyes, Wasko, and Pirraglia were deliberately indifferent to his serious medical needs because they were aware of the risk of harm of changing his prescription times and decided to have his prescription changed without a doctor's order and new treatment plan. *Id.* at 15; *see also* Doc. 15-1 at 24–28, 120. *But see* Doc. 15-1 at 25, 27, 32, 37, 42, 103, 111–13, 117

(containing responses from staff indicating that the decision to change medication is approved by a qualified mental health provider).

Olage claims that Cook was deliberately indifferent to his serious medical needs because she failed to make Defendants aware of his mental health treatment plan. Doc. 15 at 23. Cook was a member of the Review Board of A-Floor, which is a segregated housing unit. *Id.* Cook did not inform Wasko, Reyes, Nixon, and Pirraglia that Olage was under a mental health plan and was to not be placed in the segregated housing detention because he took psychotropic medication. *Id.*

Doyle, acting as the Americans with Disabilities Act (ADA) coordinator, denied accommodations for Olage's mental health needs, which he claims is a disability. *Id.* at 24; *see also* Doc. 15-1 at 91–92. She allegedly did not provide reasonable accommodation, which resulted in discrimination and exclusion from participation in beneficial prison services, programs, and activities. Doc. 15 at 24. He claims that his mental health conditions prevent him from proper thinking and concentration, which denied him the ability to participate in activities. *Id.*

Olage alleges that Ponto, Fraser, Williams, Fedt, Scott, Moore, Wasko, Pirraglia, Reyes, Nixon, Eilers, Nelson, and Carda are indifferent to his serious mental health disorders. *Id.* at 22. Defendants ignored Olage's diagnoses for mental health conditions and new disorders that have not been diagnosed. *Id.*; *see also* Doc. 15-1 at 29–43, 119. Olage alleges that Defendants inflicted these mental health disorders on him and were deliberately indifferent. Doc. 15 at 22.

Olage also claims that Wasko, Pirraglia, Reyes, Nixon, Eilers, Nelson, and Carda failed to provide adequate mental health care and failed to develop protocols for the appropriate use and monitoring of psychotropic medication. *Id.* at 16–17. These Defendants failed to provide

psychotherapy treatment planning and did not provide a psychiatrist to diagnose Olage's schizophrenia, manic depression, suicidal ideation, post-traumatic stress disorder, and claustrophobia. *Id.* at 16. *But see* Doc. 15-1 at 40, 101 (containing responses indicating that Olage sees a mental health provider for medication and a mental health professional for therapy). He also claims that Defendants do not provide adequate psychotherapy teaching skills to manage health on a long-term basis. Doc. 15 at 16. Olage claims that Defendants know of his diagnoses and mental health disorders but failed to provide psychotherapy counseling sessions before a change in medication. *Id.*

Defendants allegedly have caused Olage to suffer from severe symptoms of claustrophobia without providing adequate mental health care. *Id.* at 17. In 2023, Olage suffered from claustrophobia during an MRI for his back pain. *Id.* Nurse technicians had to hold Olage's feet to conduct the MRI due to his claustrophobia. *Id.* He claims that because Defendants disregard his claustrophobia and failed to diagnose and treat it, he was prevented from receiving a proper MRI for his back pain and currently for his knee complications. *Id.*

In August 2024, Olage wrote kites to Eilers about his medication change in an attempt to complete the first stage of the informal resolution process. *Id.* at 18. Eilers attempted to circumvent Olage's claims by stating that his kites were written in another inmate's handwriting. *Id.* Eilers messaged Sastak to come to the office, and Sastak intimidated Olage and made him fearful of retaliation if he filed future grievances. *Id.*; *see also* Doc. 15-1 at 125. Meyers and Funk informed Olage that he would not receive his medication because he attempted to file a grievance. Doc. 15 at 18. Olage sent Nixon a kite about the retaliation. *Id.*

### C.    Medical Treatment

#### 1.    Knee Pain

Olage suffered from pain and swelling in his left knee. *Id.* at 9. He sent a kite to DOC medical services. *Id.* On May 20, 2024, a DOC nurse first saw Olage relating to his knee injury. *Id.* at 11. The nurse failed to note the swelling in his knee and failed to complete a full check-up. *Id.* On June 6, 2024, a nurse again saw Olage for his knee and delayed treatment for medical care of his knee. *Id.*; *see also* Doc. 15-1 at 76–79. Lawrence County, Wasko, Reyes, and Eilers knew of Olage's pain in his left knee, but they allowed DOC medical services to improperly assess his medical needs. Doc. 15 at 11. Olage filed several grievances requesting to be referred for clemency or recommended for compassionate parole release due to his knee pain, but DOC staff denied his requests because he did not have a medical diagnosis that qualified him for review by the compassionate release committee. Doc. 15-1 at 4–9, 46–50, 55–60, 66, 100, 124.

Medical staff ordered an x-ray and told Olage to purchase ibuprofen from commissary. Doc. 15 at 9. Medical staff claimed that the injury occurred because Olage worked out, and the medical staff did not include in his medical records that swelling occurred. *Id.* Medical staff allegedly gave Olage improper work out orders in physical therapy. *Id.* at 11. Olage claims that Lawrence County, Wasko, Reyes, and Eilers permitted medical staff to not provide medical care and to proceed with their improper assessment, which caused Olage significant pain and trouble walking. *Id.* at 9, 11. Medical staff also did not provide a recommendation for a left knee replacement. *Id.* at 9.

Olage claims that Wasko, Reyes, and Eilers deprived him of his property because they allowed him to be overcharged for his medical expenses. *Id.* at 10. DOC medical services charge a two-to-three dollar fee for an initial medical evaluation by a nurse requested via kite. *Id.*

Inmates are not to be charged again if future requests relate to the same medical issues. *Id.* Wasko, Reyes, and Eilers have allowed a fee to be charged for follow-up appointments or requests based on the same medical issues. *Id.* Olage has been seen multiple times for the same issue with his knee, but Wasko, Reyes, and Eilers have allowed medical staff to charge Olage fees to be seen again on the same issue. *Id.*; *see also* Doc. 15-1 at 76. Olage alleges that Wasko, Reyes, and Eilers violated his Fourteenth Amendment right to due process. Doc. 15 at 10.

Olage also claims that Wasko, Reyes, and Eilers treated him differently than similarly situated inmates with similar knee pain and conditions. *Id.* at 13. On June 21, 2024, and July 15, 2024, Wasko, Reyes, and Eilers denied him a $3.00 refund, an MRI, a knee brace, and knee surgery. *Id.* Olage alleges that similarly situated inmate, Winston Grey Brakeall, received all four remedies. *Id.* Olage alleges that Wasko, Reyes, and Eilers violated his right to equal protection under the Fourteenth Amendment. *Id.*

### 2.    Foot Pain

Olage sent a kite to medical services about his foot pain and his feet being off balanced. *Id.* at 12. On January 31, 2024, he saw a podiatrist, who was an outside provider. *Id.* The outside provider approved Olage for medical shoes. *Id.* On March 16, 2024, health services staff informed Olage that the request for medical shoes was pending and would take about thirty days to be reviewed. *Id.*; *see also* Doc. 15-1 at 10–23, 72, 107–08, 115. As of July 15, 2024, Olage had not received medical shoes, and he continued to experience pain, unbalanced walking, and deformity of his feet. Doc. 15 at 12. He claims that Lawrence County, Wasko, Reyes, and Eilers disregarded his medical need or delayed the medical shoes. *Id.*

12

###    D.    State Court

Olage claims that Lawrence County, South Dakota, had a practice, policy, or procedure to have Judge Warren Johnson, a circuit judge in South Dakota's Fourth Judicial Circuit, enter a judgment in Olage's state criminal case (CR 06-243). *Id.* at 8. Judge Johnson sentenced Olage to serve fifty years' imprisonment in the SDSP "to be fed, kept, and clothed in accordance with the rules of governing said institution such as SDCL 24-2-2.1 and SDCL 23A-27-4[.]" Doc. 15 at 8. "The Lawrence County's judgment is depriving adequate medical care for the S.D. DOC and Mike Durfee State Prison is failing to provide medical care and needs to treat the knee medical complications under municipal liability. Lawrence County refuses to consider a motion for sentence modification for treatment." *Id.* He claims that Lawrence County violated his rights under the Eighth Amendment. *Id.*

At 5:30 a.m. on October 16, 2009, Benting called Olage to the transport room. *Id.* at 25. Benting directed Olage to give her his legal envelope containing bulk legal documents for his petition for writ of habeas corpus in Lawrence County (Case Number Civ. 09-420) because she told him that he was not allowed to take legal paperwork with him to court. *Id.* at 25–26. Olage claimed that other inmates were allowed to be transported with their paperwork. *Id.* He refused to go to court because he felt it would be worthless without his legal papers. *Id.* at 25. Benting threatened him with a disciplinary action to the special housing unit if he did not go to court. *Id.* In fear of retaliation, Olage gave Benting his legal documents. *Id.* Benting gave Olage's documents to another inmate to give to Unit Coordinator Stobe. *Id.* After the hearing, Stobe gave Olage back his legal papers. *Id.* Because of Benting's actions, Olage was denied his request for a successive habeas petition and experienced fear of retaliation, which "inflict[ed] mental disabilities to present habeas petition." *Id.* He alleges that Benting's actions violated his First

Amendment right to access the courts and his Fourteenth Amendment right to equal protection. *Id.* at 25–26.

### E.    Mail

Olage alleges that Eilers and another staff member were preventing him from mailing legal work. Doc. 15-1 at 95–96. He sent a kite to Eilers about the refusal to send mail, despite him paying for postage on commissary. *Id.* at 95. Olage also sent a kite to Doyle about how he has had difficulties receiving legal copies and mail. *Id.* He also sent a kite to Reyes about his staff preventing him from sending legal mail. *Id.* at 98–99; *see also* Doc. 9 ¶ 2.

### F.    Claims and Requested Relief

Olage sues all Defendants in their individual and official capacities. Doc. 15 at 2–6. He alleges claims for violation of his rights under the First, Fourth, Eighth, and Fourteenth Amendments. *Id.* at 8–26. Because of Defendants' actions, Olage's alleged injuries include physical pain and suffering; past and future pain and suffering; emotional distress; mental anguish; diminished mental state; psychological injuries; mental disabilities; learning disabilities; disabled from mind to concentrate; anxiety attacks; fear of harm, death, retaliation, and attacks; nightmare disorder; permanent injury; psychosis; post-traumatic stress disorder; depression; claustrophobia; paranoia; schizophrenia; mental conditions; uncontrollable mood fluctuation; hallucinations; mentally unfit; denial of habeas petition and recent post-conviction pleadings as time-barred; denial to file successive habeas petition; loss of enjoyment of life and employment; loss of earning power and future income; loss of ability to enjoy recreational activities; loss of consortium; loss of control; loss of earned discharge credits (EDCs); loss of skills; deprivation of funds to purchase legal supplies; future medical expenses; back pain; neck pain and complications; knee complications; rupture meniscus; damaged fibrous cartilage and ligaments;

joint damage; permanent limp; total knee replacement; permanent pain and limitations; limping; unbalanced walking; and disfigurement of his feet. *Id.* at 8–13, 15–26.

He seeks $10,000,000 in monetary damages or "monetary relief including any back and front pay, compensatory damages, punitive damages, prejudgment interest, attorneys' fees, and retroactive benefits, and requesting appropriate relief with monetary damages, . . . and nominal damages." *Id.* at 27. He also seeks equitable relief, including injunctive and declaratory relief. *Id.*

## II.    Legal Background

The court must assume as true all facts well pleaded in the complaint. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If it does not contain these bare essentials, dismissal is appropriate. *See Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to

15

sustain recovery under some viable legal theory"). Under 28 U.S.C. § 1915A, the court must

screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to

state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant

who is immune from such relief." 28 U.S.C. § 1915A(b). The Court will now assess each

individual claim under 28 U.S.C. § 1915A.

## III.    Discussion

### A.    Claims Against Lawrence County

Olage sues Lawrence County for money damages and declaratory and injunctive relief.

Doc. 15 at 27. Olage alleges that Lawrence County is liable because the state-court judge

sentenced him to fifty years' imprisonment and the judgment in his criminal case resulted in the

deprivation of adequate medical care in DOC facilities. *Id.* at 8, 11–12. A county or local

government may only be sued "when execution of a government's policy or custom, whether

made by its lawmakers or by those whose edicts or acts may fairly be said to represent official

policy," deprives a plaintiff of a federal right. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694

(1978). Municipal liability attaches "(1) where a particular municipal policy or custom itself

violates federal law, or directs an employee to do so; [or] (2) where a facially lawful municipal

policy or custom was adopted with 'deliberate indifference' to its known or obvious

consequences." *Moyle v. Anderson*, 571 F.3d 814, 817–18 (8th Cir. 2009) (citing *Seymour v. City

of Des Moines*, 519 F.3d 790, 800 (8th Cir. 2008)).

To establish local governmental liability premised on an unofficial custom rather than an

official policy, a plaintiff must allege facts to support a finding of "a continuing, widespread,

persistent pattern of unconstitutional misconduct by the governmental entity's employees" and

"deliberate indifference to or tacit authorization of such conduct by the governmental entity's

policymaking officials after notice to the officials of that misconduct[.]" *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (quoting *Corwin v. City of Indep.*, 829 F.3d 695, 700 (8th Cir. 2016)). A § 1983 complaint does not need to "specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (citing *Doe ex rel. Doe v. Sch. Dist.*, 340 F.3d 605, 614 (8th Cir. 2003)). But the complaint must include some allegation, reference, or language that creates an inference that the conduct resulted from an unconstitutional policy or custom. *Id.*; *see also Doe*, 340 F.3d at 614 ("At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom.").

Olage appears to state that Lincoln County had a practice, policy, or procedure, but he does not allege any facts indicating the existence of a policy or custom. Doc. 15 at 8. Merely reciting the elements of a cause of action is insufficient to state a claim. *Twombly*, 550 U.S. at 555. The closest thing Olage identifies to a policy is his belief that Lawrence County had a "practice [ ] policy or procedure to have their circuit court judge Warren Johnson of the Fourth Judicial Circuit Court in case (CR06-243) to order a judgment to make [Olage] serve fifty years in the [SDSP] to be fed, kept, and clothed in accordance with the rules of governing said institution such as SDCL 24-2-2.1 and SDCL 23A-27-4[.]" Doc. 15 at 8. He does not identify a policy but merely concludes there was a policy based on the specific facts of his case, which is insufficient to indicate a widespread policy or custom. Even if he is claiming the existence of a policy, he clearly identifies that the sentence was entered by Judge Johnson. Judges in the South Dakota Unified Judicial System are employees of the State of South Dakota, and the Fourth Judicial Circuit of South Dakota is a state entity. S.D. Const. art. V § 3; *see also Archer v. Little*, 5:23-CV-05002, 2023 WL 3484166, at *6 n.4 (D.S.D. May 16, 2023) (taking judicial notice that

county clerk of court employees were employees of the South Dakota Unified Judicial System and thus employees of the State of South Dakota). Thus, Olage's claims against Lawrence County are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### B. Official Capacity Claims for Money Damages Against State Employees

Olage sues all defendants in their individual and official capacities. Doc. 15 at 2–6. He sues Wasko, Reyes, Eilers, Doyle, Nelson, Carda, Nixon, Ponto, Benting, Fraser, Williams, Fedt, Scott, Moore, Meyers, Funk, Pirraglia, and Sastak as employees of the State of South Dakota. *Id.* The Supreme Court has held that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. *Id.* Here, Olage seeks monetary damages against all Defendants. Doc. 15 at 27. Claims against Defendants employed by the State of South Dakota in their official capacities are the equivalent of claims for money damages against the State of South Dakota. The State of South Dakota has not waived its sovereign immunity. Thus, Olage's claims against all Defendants employed by the State of South Dakota in their official capacities for money damages are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

### C. Claims for Injunctive and Declaratory Relief Against SDSP Employees

Olage requests injunctive and declaratory relief against Ponto, Benting, Fraser, Williams, Fedt, Scott, and Moore as employees of the SDSP. Doc. 15 at 4–5, 27. Olage is no longer housed at the SDSP. *Id.* at 1. The Eighth Circuit held that an "inmate's claims for declaratory and injunctive relief are moot when he is transferred to another facility and is no longer subject to alleged unlawful conditions." *Gladson v. Iowa Dep't of Corr.*, 551 F.3d 825, 835 (8th Cir. 2009) (citing *Pratt v. Corr. Corp. of Am.*, 267 F. App'x 482, 482 (8th Cir. 2008) (per curiam)); *see also Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (finding that an inmate's transfer to a new facility weeks before a trial for violation of his First Amendment rights mooted his claims for injunctive relief); *Wycoff v. Brewer*, 572 F.2d 1260, 1262 (8th Cir. 1978) (holding that a prisoner's claims for injunctive relief for violation of his Fourteenth Amendment rights were moot when plaintiff was transferred to a different penitentiary). Thus, Olage's claims for injunctive and declaratory relief against SDSP employees—Ponto,[2] Benting, Fraser, Williams, Fedt, Scott, and Moore—are dismissed without prejudice as moot under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### D. Statute of Limitations

Olage claims that in 2009, Benting violated his rights under the First and Fourteenth Amendments. Doc. 15 at 25–26. Olage claims that in 2015, Ponto, Fraser, Williams, Fedt, Scott, and Moore violated his rights under the Fourth and Eighth Amendments. *Id.* at 19–21. The Eighth Circuit has held that "[a]lthough the statute of limitations is an affirmative defense, a district court may properly dismiss an in forma pauperis complaint under 28 U.S.C. § 1915(d)

---

[2] Ponto is no longer employed by the DOC. Doc. 15-1 at 68. All claims against Ponto in his official capacity are dismissed. Thus, this Court need not substitute Ponto's successor under Federal Rule of Civil Procedure 25(d) because doing so would be futile.

[predecessor of 28 U.S.C. § 1915(e)(2)(B)] when it is apparent the statute of limitations has run." *Myers v. Vogal*, 960 F.2d 750, 751 (8th Cir. 1992) (per curiam) (citations omitted). Because 42 U.S.C. § 1983 does not contain a specific statute of limitations, the United States Supreme Court has instructed courts to apply the analogous state statute of limitations. *Bell v. Fowler*, 99 F.3d 262, 265–66 (8th Cir. 1996) (citing *Wilson v. Garcia*, 471 U.S. 261, 266–68 (1985)). Under South Dakota law, "[f]ederal civil rights actions must be brought within three years after the alleged constitutional deprivation occurred." *Sisney v. Best Inc.*, 754 N.W.2d 804, 809 (S.D. 2008) (citing SDCL § 15-2-15.2).

Olage's claims for conduct occurring in 2015 did not occur within three years of Olage filing his complaint. Olage claims that he continues to experience consequences from the conduct that occurred in 2015, such as he has mental and physical pain. Doc. 15 at 19–21. Although he claims that he still suffers from injuries related to the conduct, the accrual date of a § 1983 action "occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Gonzalez v. Dakota Cnty.*, 2015 WL 6695661, at *2 (D. Neb. Nov. 3, 2015) (citation omitted). The fact that Olage's change of medication on July 26, 2024, caused him to begin experiencing mental health injuries from the 2015 incident does not change the fact that his claim accrued in 2015.[3] Doc. 15 at 21. Because Olage had a completed claim in 2015, SDCL § 15-2-15.2 bars his claims. Thus, Olage's claims for conduct occurring in 2015 are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).[4]

---

[3] This Court will separately analyze claims relating to Olage's mental health treatment in 2024.

[4] This Court has also considered SDCL § 15-2-15.2 to be a statute of repose, which would not allow tolling and would be determined based on the last culpable act or omission. *See Rindahl v. Reisch*, 4:22-CV-04073-RAL, 2024 WL 1257348, at *3 (D.S.D. Mar. 25, 2024). In this instance, regardless of whether this Court construes SDCL § 15-2-15.2 as a statute of limitations or a statute of repose, the last culpable act occurred in 2015. Even if this Court

Olage alleges a First Amendment access to the courts claim against Benting and a Fourteenth Amendment equal protection claim against Benting for conduct occurring in 2009. Doc. 15 at 25–26. Olage had a full and complete equal protection claim which accrued in 2009; thus, Olage's Fourteenth Amendment equal protection claim against Benting for conduct occurring in 2009 is barred by the statute of limitations and is dismissed with prejudice.

Olage alleges that Benting violated his First Amendment right to access the courts because she would not allow him to bring legal papers for his state habeas petition, which resulted in denial of his habeas petition. *Id.* at 25. Because it is unclear from Olage's complaint whether his access to the courts claim accrued at the date of the hearing in 2009 or at the time the complaint was dismissed, this Court will separately analyze Olage's First Amendment access to the courts claim against Benting.

### E.    Remaining Individual Capacity Claims for Money Damages and Official Capacity Claims for Injunctive and Declaratory Relief

"Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official capacity defendants only for injunctive relief." *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's

considered SDCL § 15-2-15.2 as a statute of limitations, the South Dakota Supreme Court has "not officially adopted the equitable tolling doctrine for civil cases[,]" but if this Court were to consider equitable tolling, "'[t]he threshold for consideration of equitable tolling is inequitable circumstances not caused by the plaintiff that prevented the plaintiff from timely filing.'" *In re Est. of French*, 956 N.W.2d 806, 811–12 (S.D. 2021) (quoting *Anson v. Star Brite Inn Motel*, 788 N.W.2d 822, 825 n.2 (S.D. 2010)). Olage has made no allegations of inequitable circumstances that prevented him from timely filing this lawsuit. *See generally* Doc. 15. Thus, Olage's claims for conduct occurring in 2015 are time-barred under SDCL § 15-2-15.2.

constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

*Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). Olage's individual capacity claims must allege that each individual defendant either participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor.

### 1.    First Amendment Access to the Courts

Olage sues Benting for violation of his First Amendment right to access the courts. Doc. 15 at 25. "The Constitution guarantees prisoners a right to access the courts." *White v. Kautzky*, 494 F.3d 677, 679 (8th Cir. 2007). "The Supreme Court has held that 'the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.' " *Entzi v. Redmann*, 485 F.3d 998, 1004–05 (8th Cir. 2007) (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)). To succeed on a claim for denial of access to the courts, a plaintiff must show that he suffered actual injury as a result of the defendants' actions. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). In order to satisfy the actual injury requirement, a plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Johnson v. Missouri*, 142 F.3d 1087, 1089 (8th Cir. 1998) (quoting *Casey*, 518 U.S. at 353). "Actual injury" means "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348. "The right of access to the courts is satisfied if the prisoner has 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.' " *Zink v. Lombardi*, 783 F.3d 1089, 1108 (8th Cir. 2015) (quoting *Casey*, 518 U.S. at 356).

Here, Olage claims that Benting prevented him from adequately presenting his state habeas petition by denying him access to his legal materials during a hearing. Doc. 15 at 25. Olage pleaded guilty to his criminal charges and was sentenced in 2006. Doc. 15-1 at 44, 51–52, 54, 93. Olage alleges that Benting prevented him from bringing the legal papers to his hearing in 2009, but he does not allege when his habeas petition was dismissed or denied. Doc. 15 at 25–26. He also has not alleged sufficient facts to show that the claim he was prevented from making was not frivolous. *Id.* Thus, Olage's First Amendment access to the courts claim against Benting is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## 2.    First Amendment Retaliation

Olage sues Eilers, Sastak, Reyes, Nixon, Meyers, and Funk for retaliation. Doc. 15 at 18. In order for a plaintiff to allege a First Amendment retaliation claim, he must show that "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Spencer v. Jackson Cnty.*, 738 F.3d 907, 911 (8th Cir. 2013) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). "The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007) (citing *Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir. 1994)).

Here, Olage claims that he attempted to file an informal resolution request. Doc. 15 at 18. Olage was informed that he would not receive his medication because he attempted to file the request. *Id.* Thus, Olage's First Amendment retaliation claims against Eilers, Sastak, Reyes,

Nixon, Meyers, and Funk in their individual capacities for money damages and their official

capacities for injunctive and declaratory relief survive § 1915A screening.

### 3.     First Amendment Right to Send and Receive Mail

In the grievances attached to Olage's amended complaint, he alleges that Eilers interfered

with his right to send mail.[5] Doc. 15-1 at 95–96. The Eighth Circuit has recognized that inmates

retain a First Amendment right to "send and receive mail." *Thongvanh v. Thalacker*, 17 F.3d

256, 258 (8th Cir. 1994) (citations omitted). The Eighth Circuit applied a four-factor test to

prison mail regulations:

> (1) whether there is a valid rational connection between the regulation and the
> legitimate government interest it purports to further; (2) whether the inmate has an
> alternative means of exercising his constitutional right; (3) the impact that
> accommodation of the inmate's right would have upon others, including inmates as
> well as non-inmates; and (4) the absence of a ready alternative to the regulation.

*Turner v. Safley*, 482 U.S. 78, 89 (1987). *Turner*'s standard applies to both incoming and

outgoing mail. *Thongvanh*, 17 F.3d at 259 (citing *Smith v. Delo*, 995 F.2d 827, 830 (8th Cir.

1993)).

Here, Olage claims that Eilers has interfered with his right to send and receive mail. Doc.

15-1 at 95–96. Doyle and Reyes were made aware of their staff's interference with his mail, but

there is no indication that they took any action to aid in Olage's sending of mail once made

aware.[6] *Id.* at 95–96, 98–99. It is unclear whether Olage's mail was merely delayed or denied

entirely. This Court cannot determine at this time whether Olage's claim is wholly without merit.

---

[5] Olage also claims that Sergeant Knox and Corporal Charissa Warembourg have interfered with his mail, but Knox and Warembourg are not named as Defendants. *See* Doc. 15 at 1–6; Doc. 15-1 at 95–96, 98–99.

[6] Olage also claims that prison staff, including Eilers, did not provide him legal copies. Doc. 15-1 at 95–96. Even if this Court were to liberally construe this as an access to the courts claim, his claim would fail because he has not alleged that he suffered an actual injury. *Id.*

Olage's complaint could also be liberally construed to allege a claim for violation of his First Amendment right to petition the government because Defendants prevented him from sending mail to the then President seeking a pardon.[7] Doc. 15-1 at 95–96. "Congress shall make no law" abridging the right of the people "to petition the Government for a redress of grievances." U.S. Const. amend. I. "The right to petition the government . . . is analyzed the same as the right to free speech." *Gunter v. Morrison*, 497 F.3d 868, 872 (8th Cir. 2007). This Court cannot determine at this time that Olage's claim is wholly without merit. Thus, Olage has alleged sufficient facts for his First Amendment rights to send and receive mail and to petition the government claims against Eilers, Doyle, and Reyes in their individual capacities for money damages and official capacities for injunctive and declaratory relief to survive § 1915A screening.[8]

### 4.    Eighth Amendment Deliberate Indifference to Serious Medical Needs

"[D]eliberate indifference to serious medical needs of prisoners constitutes 'the unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's

---

[7] Olage was able to send a request for clemency to then Governor Noem. Doc. 15-1 at 47.

[8] In the attachments to his complaint, Olage included as exhibits requests for clemency and several grievances he filed requesting compassionate release and the DOC staff's denials of his requests for compassionate release. *See* Doc. 15-1 at 4–9, 46–50, 55–60, 66, 100, 124. Even liberally construing Olage's complaint, the only claim he appears to allege related to these claims are deliberate indifference under the Eighth Amendment. He does not appear to allege any other claims related to denial of his requests for compassionate release or clemency. He does allege in a letter to then President Biden that he attached kites showing how prison officials have frustrated his clemency applications, Doc. 15-1 at 50, but the kites related to clemency that he submits as attachments are not to Defendants named in this suit, *id.* at 55–60. Thus, this Court is unable to clearly identify any additional claims against named Defendants related to clemency or compassionate release.

needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing *Est. of Rosenberg*, 56 F.3d at 37).

The deliberate indifference standard includes both an objective and subjective component. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he or she] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Id.* (citing *Coleman*, 114 F.3d at 784). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman*, 114 F.3d at 784 (internal quotation omitted). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Spruce v. Sargent*, 149 F.3d 783, 786 (8th Cir. 1998) ("[C]onstructive knowledge, or the 'should-have-known' standard, is not sufficient to support a finding of deliberate indifference . . . .").

Here, Olage alleges that Wasko, Reyes, and Eilers were deliberately indifferent to his knee pain and complications, which he claims resulted in permanent pain and limitations. Doc.

15 at 9, 11. He claims that Wasko, Reyes, and Eilers were deliberately indifferent to his needs for medical shoes, and the failure to provide medical shoes resulted in pain and disfigurement of his feet. *Id.* at 12. The attachments to Olage's amended complaint could also be liberally construed to allege Eighth Amendment deliberate indifference claims for his knee and foot pain against Doyle because she responded to his grievances about the pain and did not assist with remedying his pain or concerns. Doc. 15-1 at 15–16, 19–20. Thus, Olage's Eighth Amendment deliberate indifference to serious medical needs claims for his knee and foot complications against Wasko, Reyes, Eilers, and Doyle in their individual capacities for money damages and official capacities for injunctive and declaratory relief survive § 1915A screening.

Olage also claims that Eilers, Nelson, Nixon, Reyes, Wasko, Pirraglia, Doyle, Carda, Ponto, Fraser, Williams, Fedt, Scott, Moore, and Cook were deliberately indifferent to his mental health needs, failed to provide care necessary to manage his mental illnesses, and ignored his disorders and medical orders for psychotropic medication. Doc. 15 at 15–17, 22–24. Although some of the conditions that Olage identifies may not be considered serious medical needs, he has alleged sufficient facts for his deliberate indifference for serious medical needs claims related to his mental health to survive screening. Thus, Olage's deliberate indifference to serious medical needs claims for his mental health against Eilers, Nelson, Nixon, Reyes, Wasko, Pirraglia, Doyle, Carda, and Cook in their individual capacities for money damages and official capacities for injunctive and declaratory relief and Ponto, Fraser, Williams, Fedt, Scott, and Moore in only their individual capacities for money damages survive § 1915A screening.

### 5.    Americans with Disabilities Act

Olage's amended complaint could be liberally construed to allege a failure to make reasonable accommodations claim under Title II of the ADA against Doyle for failure to provide

reasonable accommodations and discrimination. Doc. 15 at 24. Title II of the ADA states that

"no qualified individual with a disability shall, by reason of such disability, be excluded from

participation in or be denied the benefits of the services, programs, or activities of a public entity,

or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see also Mason v.*

*Corr. Med. Servs., Inc.*, 559 F.3d 880, 886 (8th Cir. 2009).

To succeed on a failure to provide reasonable accommodations claim, a plaintiff must

show:

> (1) that he is a qualified individual with a disability; (2) that he was excluded from
> participation in or denied the benefits of the [penitentiary's] services, programs, or
> activities, or was otherwise subjected to discrimination by the [penitentiary]; and
> (3) that such exclusion, denial of benefits, or other discrimination was by reason of
> his disability.

*Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010) (per curiam). Intentional

discrimination claims under the ADA are also known as disparate treatment. *Peebles v. Potter*,

354 F.3d 761, 765 (8th Cir. 2004). "In disparate treatment cases, a similarly situated disabled

individual is treated differently because of his disability than less- or non-disabled individuals.

The key element is discriminatory intent." *Id.* at 766 (citing *Reeves v. Sanderson Plumbing*

*Prods., Inc.*, 530 U.S. 133, 153 (2000)).

Olage alleges that his mental health conditions are disabilities. Doc. 15 at 24. Olage may

be disabled under the ADA. *See* 42 U.S.C. § 12102. He alleges that his "mental health disorders

prevent[] him to be adequate with proper thinking and concentration to be timely and compliant

in activities or filings of such nature." Doc. 15 at 24. Because of Doyle's actions, he claims that

he suffered an injury of loss of EDCs, but he has not explained if he was excluded from

participation in a program to obtain EDCs or how he suffered such injury. *Id.* He attempts to

merely recite the elements of the claims without providing any details of how he was excluded

from prison services, programs, and activities or how he was discriminated against. *Id.* Further, Title II of the ADA does not permit individual capacity claims. *Dinkins v. Corr. Med. Servs.*, 743 F.3d 633, 634 (8th Cir. 2014) (per curiam). Thus, Olage's ADA claim is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 6.    Fourteenth Amendment Due Process

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Smith v. McKinney*, 954 F.3d 1075, 1079 (8th Cir. 2020) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (cleaned up)). "A liberty interest protectible under the due process clause of the fourteenth amendment 'may arise from two sources -- the Due Process Clause itself and the laws of the States.'" *Mahfouz v. Lockhart*, 826 F.2d 791, 792 (8th Cir. 1987) (per curiam) (quoting *Hewitt v. Helms*, 459 U.S. 460, 466 (1983)). "Once a liberty interest is established, the next question is what process is due." *Id.* (quoting *Williams v. Norris*, 277 F. App'x 647, 649 (8th Cir. 2008) (per curiam)). Individuals have a property interest in their money. *Bd. of Regents v. Roth*, 408 U.S. 564, 571–72 (1972). Here, Olage claims that Wasko, Reyes, and Eilers violated his Fourteenth Amendment right to due process because they deprived him of funds in his prison account by allowing him to be overcharged for medical services. Doc. 15 at 10.

The Fourteenth Amendment protects against deprivation of a protected property interest without due process of law. U.S. Const. amend. XIV, § 1. An intentional deprivation of property does not violate the due process clause if there is an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). A post-deprivation remedy does not satisfy due process

requirements if the property deprivation was effected pursuant to an established state procedure. *Id.* at 532 (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982)).

Here, Olage claims that his money was improperly taken because he was not obligated to pay for follow-up appointments. Doc. 15 at 10. Although he identifies that there was a state procedure for collecting payments for medical services, he claims that his money was wrongly taken not in accordance with the state procedure. *Id.* SDCL § 21-3-3 recognizes a cause of action for wrongful conversion. *See also Chem-Age Indus., Inc. v. Glover*, 652 N.W.2d 756, 766 (S.D. 2002) ("Conversion is the unauthorized exercise of control or dominion over personal property in a way that repudiates an owner's right in the property or in a manner inconsistent with such right."). Because there is an adequate post-deprivation remedy in the form of a cause of action for conversion, Olage's Fourteenth Amendment due process claim for overcharging for medical expenses is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).[9]

### 7.    Fourteenth Amendment Equal Protection

The equal protection clause of the Fourteenth Amendment requires that the government "treat similarly situated people alike," a protection that applies to prisoners. *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 984 (8th Cir. 2004) (quoting *Rouse v. Benton*, 193 F.3d 936, 942 (8th Cir. 1999)). To show an equal protection violation, Olage must show: (1) he is treated differently than a similarly situated class of inmates, (2) the different treatment burdens a fundamental right,

---

[9] Olage claims that because he was overcharged for his medical services he was "depriv[ed] funds from purchasing legal supplies as stamps, legal paper, ink pens, legal copies, envelopes for legal matters." Doc. 15 at 10. Even if this Court liberally construed this as a First Amendment access to the courts claim, Olage's claim would fail because he has not alleged that he suffered any actual injury. *See Lewis*, 518 U.S. at 349 (holding that to succeed on a claim for denial of access to the courts, plaintiff must show that he suffered actual injury as a result of defendants' actions); *Johnson*, 142 F.3d at 1089 (holding that to meet the actual injury requirement the plaintiff must show that a nonfrivolous legal claim was frustrated or impeded).

and (3) there is no rational relation between the different treatment and any legitimate penal interest. *Id.* (citing *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998) (en banc)). A plaintiff must first demonstrate that he was treated "differently than others who were similarly situated to h[im]." *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994). *See also In re Kemp*, 894 F.3d 900, 910 (8th Cir. 2018) ("[d]issimilar treatment of dissimilarly situated persons does not violate equal protection" (alteration in original) (quoting *Klinger*, 31 F.3d at 731)). An equal protection violation also requires "an intent to discriminate." *In re Kemp*, 894 F.3d at 910.

An equal protection claim has been recognized through a "class of one" where a "plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The Eighth Circuit applied a class of one analysis in the prison setting to an inmate's allegations of discrimination because the parole board denied him parole but granted parole to similarly situated inmates. *Nolan v. Thompson*, 521 F.3d 983, 989 (8th Cir. 2008). In *Nolan*, the Eighth Circuit held that "[a] class-of-one plaintiff must therefore 'provide a specific and detailed account of the nature of the preferred treatment of the favored class,' especially when the state actors exercise broad discretion to balance a number of legitimate considerations." *Id.* at 990 (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1214–15 (10th Cir. 2004)).

Here, Olage claims that he was intentionally treated differently than other inmates with similar knee conditions. Doc. 15 at 13. Wasko, Reyes, and Eilers denied Olage a medical cost refund, an MRI, a knee brace, and knee treatment, including surgery. *Id.* Another inmate with a similar knee condition was provided all four remedies. *Id.* Olage claims that he was treated differently than similarly situated inmates and that there was no rational basis for the purposeful and intentional different treatment, which is enough to survive screening by a thin margin. *Id.*

Because this Court cannot determine that Olage's claims are wholly without merit, Olage's Fourteenth Amendment equal protection claims against Wasko, Reyes, and Eilers in their individual capacities for money damages and their official capacities for injunctive and declaratory relief survive § 1915A screening.

Olage also included in a grievance attached to his amended complaint that Ponto violated his Fourteenth Amendment equal protection right to be treated fairly because he allowed medical services to override Olage's treatment. Doc. 15-1 at 34, 36, 38. But Olage does not allege that he was treated differently than a similarly situated favored class. *Id.* Thus, Olage's Fourteenth Amendment equal protection claim against Ponto is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## MOTION TO APPOINT COUNSEL

Olage moves for the appointment of counsel. Doc. 12. In preparing his filings, he received assistance from an inmate writ writer, Michael Lynn Merrival, Jr., but he claims that appointment of counsel will be needed later in his case. *Id.* He asserts that his claims are factually complex, and he foresees that there will be difficulty obtaining discovery. *Id.* at 2. "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). Under 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." The Eighth Circuit considers "the factual complexity of the case, the ability of the indigent to investigate the facts, the existence of conflicting testimony, the ability of the indigent to present his claim and the complexity of the legal issues." *Abdullah v. Gunter*, 949 F.2d 1032, 1035 (8th Cir. 1991) (citing *Johnson*, 788 F.2d at 1322-23).

Olage claims that he received legal assistance from an inmate writ writer in preparing his filings. Doc. 12 at 3. At this time, Olage's filings clearly communicate his concerns and have adequately presented them to this Court. Because Olage's claims are not legally nor factually complex and because he has clearly and adequately presented his facts and claims to this Court, his motion for appointment of counsel, Doc. 12, is denied. The Court remains open to the possibility of appointing counsel if this case proceeds beyond the motion stage. It is one thing to well represent one's position on paper to the Court, and it is yet another to be able to adequately try a case to a jury.

This Court is aware that this situation may change as litigation progresses. As the Eighth Circuit instructs, the Court will "continue to be alert to the possibility that, because of procedural complexities or other reasons, later developments in the case may show either that counsel should be appointed, or that strict procedural requirements should, in fairness, be relaxed to some degree." *Williams v. Carter*, 10 F.3d 563, 567 (8th Cir. 1993).

## MOTION FOR TEMPORARY RESTRAINING ORDER

Olage filed a motion for temporary restraining order (TRO), Doc. 16, and a verification of complaint supporting his request for a TRO, Doc. 14. He requests that this Court enter a TRO restraining Defendants from enforcing customs, policies, practices, or statutes about compassionate release under SDCL § 24-15A-55; extension of confinement release under SDCL § 24-15A-63; and forms of clemency, pardon, commutation, reprieve, or remission under SDCL § 24-14-2. Doc. 16 at 2. He requests, in the alternative, additional decrees or orders as may be just and proper to preserve the status quo and to ensure that prisoners receive adequate food, clothing, shelter, and medical care. *Id.* at 2–3. He requests this relief until "the motion now on file with this Honorable Court in filing a verified complaint against the Defendants and

adverse party has been passed upon this Honorable Court and the matters set forth in the verified complaint" or "until such time as the controversies set forth in verified complaint are decided and the rights of the parties adjudicated." *Id.*

The relief Olage requests in his motion for a TRO is not available for the duration he requests. *Id.* at 2–3. TROs are limited to a period of fourteen days, with a potential for extension for another fourteen days. Fed. R. Civ. P. 65(b)(2). Motions for preliminary injunction may be permitted for longer duration, but "[t]he court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). Olage alleges that he mailed notice of his intent to file a motion for preliminary injunction and motion for TRO to the South Dakota Attorney General's Office and the Fourth Judicial Circuit of the State of South Dakota. *See* Docs. 5, 8. Olage submitted a kite that he sent to Reyes indicating some of the relief he requests, but he did not include all requested relief. *See* Doc. 15-1 at 98–99. The record is unclear whether he sent notice of the actual motion and the injunctive relief requested. Olage also clearly stated his intention that his motion is a motion for temporary restraining order under Rule 65(b) to allow a TRO to be issued without notice. Doc. 16 at 1; *see also* Doc. 13 ¶ 1. Thus, this Court does not feel that it would be appropriate at this time to construe Olage's motion for a TRO as a motion for preliminary injunction. Olage may file a motion for preliminary injunction that complies with the Federal Rules of Civil Procedure if he so chooses.

The Eighth Circuit clarified the factors district courts should consider when determining whether to grant a motion for preliminary injunctive relief: (1) the threat of irreparable harm to the movant; (2) the balance between that harm and the injury that granting the injunction will inflict on the other interested parties; (3) the probability the movant will succeed on the merits;

and (4) whether the injunction is in the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc).

The court considers if movant will suffer irreparable harm of an injury that is certain, great, and "of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Packard Elevator v. Interstate Com. Comm'n*, 782 F.2d 112, 115 (8th Cir. 1986) (internal quotations omitted); *see also Adam-Mellang v. Apartment Search, Inc.*, 96 F.3d 297, 299 (8th Cir. 1996) ("the failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction" (quoting *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987)). The purpose of preliminary injunctive relief is "to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam) (citing *Dataphase Sys., Inc.*, 640 F.2d at 113 & n.5). The party moving for preliminary injunctive relief "must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Id.* (citing *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975)). "It is inappropriate to grant a preliminary injunction for matters 'lying wholly outside the issues in the suit.' " *Brakeall v. Stanwick-Klemik*, 4:17-CV-04101-LLP, 2019 WL 3807272, at *1 (D.S.D. Aug. 13, 2019) (quoting *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)). At this time, Olage has not shown that he is likely to succeed on the merits.

Olage requests this Court issue a TRO

to restrain Lawrence County, Secretary Kellie Wasko, Warden Alex Reyes, Deb Eilers, and its officers, agents and employees from enforcing customs, practice or prison policies, or any other acts or statutes of the State of South Dakota concerning or regulating provisions of Department of Corrections laws of compassionate parole release of SDCL 24-15A-55, extension of confinement release of SDCL 24-15A-63, and forms of clemency, pardon, commutation, reprieve, or remission of

> SDCL 24-14-2, which have been regulating criterias against the plaintiff until the
> motion now on file with this Honorable Court in filing a verified complaint against
> the Defendants and adverse party has been passed upon by this Honorable Court
> and the matters set forth in the verified complaint.

Doc. 16 at 2. The exhibits attached to Olage's amended complaint include his requests to be

referred for compassionate release and denials of the request. Doc. 15-1 at 4–9, 46–50, 55–60,

66, 100, 124. The only claim he attempts to make related to these issues is that denial of his

requests violated his rights under the Eighth Amendment, which is quite incidental to his Eighth

Amendment deliberate indifference for his knee claims. *Id.* But Olage has not provided any

context how issuing the relief requested would preserve the status quo. *See* Doc. 14 ¶ 12. He

claims that he can be released on parole if compassionate release is granted, but he is requesting

to significantly change the status quo, not preserve it. Olage has not clearly alleged how if

Defendants are permitted to continue to enforce policies relating to clemency or compassionate

release that he will suffer an immediate and irreparable injury. Even if this Court could award the

relief Olage requests, he has not shown that a TRO should be issued at this time.

> Olage requests
>
> In the alternative, Complainant prays for such additional decree or orders as may
> be just and proper to preserve the status quo of the rights of the commonwealth of
> South Dakota and its citizens and prisoners concerning a treatment a prisoner
> receives in prison and conditions as to prison officials must ensure that inmates
> receive adequate food, clothing, shelter, and medical care, and must take reasonable
> measures to guuarantee [sic] the safety of the inmates, until such time as this
> Honorable Court can pass upon the motions of verified complaint, affidavit,
> declaration, and pro se pleadings, should such Motion be granted, until such time
> as the controversies set forth in verified complaint are decided and the rights of the
> parties adjudicated.

Doc. 16 at 2–3.

Here, Olage's requests for relief are quite broad and generally unrelated to the claims

alleged in his amended complaint. He appears to request relief that would extend to all South

Dakota inmates, not just to him to preserve the status quo. Further, Olage does not allege that he has been denied adequate food, clothing, or shelter. *See generally* Docs. 15, 15-1. His claims essentially related to safety, for use of excessive force, have been dismissed on screening. Thus, the only relief that Olage requests that relates to his claims that survived screening is treatment or medical care.

Olage alleges that a TRO should be issued due to his knee pain. Doc. 14 ¶ 6. He claims that "prison officials and/or Defendants failed to treat medical care to [Olage's] left knee as its seriously complicated to the point of infection, surgery, and a loss of removing the entire left leg." Doc. 14 ¶ 6. He claims that Defendants denied him an MRI, knee brace, medical shoes, pain medication, lay-in trays, and other assessments. *Id.* ¶¶ 7–8. He claims that his knee became worse to the point that physical therapy was forced to stop and referred Olage to conduct an outside MRI. *Id.* But he is unable to complete the MRI due to his mental health needs. *Id.* ¶ 9.

The attachments filed with Olage's verified amended complaint indicate that he was seen by a physical therapist. Doc. 15-1 at 7, 116. If physical therapy has been terminated, the physical therapist sends recommendations to the healthcare provider, who will review the recommendations and update his care plan. *Id.* He was also encouraged to contact medical for new or worsening symptoms. *Id.* Olage claims that Defendants' actions can result in an infection in his leg that may lead to the loss of his leg because of delayed treatment. Doc. 14 ¶¶ 6, 13. Olage does not indicate that he ever contacted medical services about a potential infection occurring, nor has he provided any medical records indicating that he developed an infection in his knee. Doc. 15-1 at 7, 116. Further, Olage has not shown how denial of a knee brace and an MRI are likely to result in an infection or loss of leg. *Id.* Thus, Olage has not shown that the alleged injury is beyond a mere possibility. *Roudachevski v. All-American Care Ctrs., Inc.*, 648

F.3d 701, 706 (8th Cir. 2011) (holding that a mere possibility of injury is insufficient to grant preliminary injunctive relief).

He also claims that Defendants have not provided him pain medication. Doc. 14 ¶ 8. But the documents attached to his amended complaint indicate that he was recommended to"[p]urchase ibuprofen from commissary since not interested in tylenol." Doc. 15-1 at 76, 78, 110. Although Olage disputes other information in the response, he does not dispute that he rejected the offered pain medication of Tylenol. *Id.* at 76–77. A prisoner is not entitled to a particular course of treatment. *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). He also claims that he was denied lay-in meal trays, Doc. 14 ¶ 8, but as of March 20, 2024, he indicated that he was walking to school and appeared to work a prison job pushing laundry carts. Doc. 15-1 at 12. It is unclear if Olage continues to walk to school and push laundry carts, but he submitted a notice for an appointment scheduled for August 21, 2024, which stated that Olage should "not go to work as it could result in a missed appointment." Doc. 15-1 at 73; *see also id.* at 62 (explaining that Olage is reducing his sentence through work and programming credits). If Olage continues to work, he has not indicated why lay-in trays would prevent an immediate injury when he continues to travel throughout the facility for work. Even if Olage no longer works, he does not include any facts in his complaint alleging that medical recommended that he be permitted to have lay-in trays or that he was encouraged to stay entirely off of his knee. Thus, Olage has not shown that a TRO is necessary at this time.

Olage also claims that a TRO is needed because he has received inadequate medical treatment for his mental health conditions and undiagnosed mental health disorders. Doc. 14 ¶ 5. Olage alleges that he will suffer from harm because Defendants separated his prescription to receive half the dosage twice-a-day instead of 400 mg of Wellbutrin at once. *Id.* ¶ 10. Olage

claims that a doctor back in 2015 had told him that Effexor would be a good treatment if his body built a tolerance to Wellbutrin, but his later requests for specific medication, including Effexor, Gabapentin, or Adderall were denied. *Id.* However, "[p]risoners do not have a constitutional right to any particular type of treatment," and "[p]rison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." *Long*, 86 F.3d at 765. Medical professionals in the prison system "remain free to exercise their independent medical judgment." *Id.* Further, the attachments to Olage's verified amended complaint indicate that "all mental health medication changes are completed by the Mental Health Provider" and Olage had spoken with a mental health professional after the change. Doc. 15-1 at 30; *see also id.* at 25, 27, 32, 42, 102–03, 111–12, 117. Olage also sees a mental health provider for medication and a mental health professional for therapy. Doc. 15-1 at 40, 91, 101. Thus, Olage has not shown that a TRO is necessary at this time. For these reasons, Olage's motion for a temporary restraining order, Doc. 16, is denied.

## AFFIDAVIT TO DISQUALIFY JUDGE

On August 28, 2024, Olage filed a motion for recusal. Doc. 11. On September 5, 2024, this Court issued an order denying Olage's motion for recusal because he had not shown bias or prejudice that would require the undersigned to recuse himself from the case. Doc. 17. On September 9, 2024, Olage filed a "Declaration for Affidavit to Disqualify Judge[.]" Doc. 18. This Court assumes that this Court's order and Olage's affidavit crossed in the mail. For the sake of completeness, this Court will liberally construe Olage's affidavit, Doc. 18, as a second motion to disqualify the undersigned.

Olage's declaration generally raises the same issues that this Court found were insufficient to require recusal in his prior motion. *Compare* Doc. 11 *and* Doc. 18. Olage's declaration does not add sufficient support to his prior unfounded allegations that would show bias or prejudice or that indicate the undersigned's impartiality might reasonably be questioned. *See* 28 U.S.C. § 144 ("Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding."); 28 U.S.C. § 455(a) ("Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.").

The sole new argument that Olage raised is that this Court delayed the proceedings of his case until Merrival, his inmate writ writer, has been released from DOC custody. Doc. 18 at 3–4. Olage in essence argues that a delay in ruling is the grounds for recusal. *Id.* As support for his arguments, he cites to three other cases prepared by Merrival, which he alleges showed a delay. *Id.* at 4 (citing *Rosado v. Wasko*, 5:23-CV-05069; *Grady v. Pennington Cnty.*, 5:23-CV-05081; *Merrival v. Pennington Cnty.*, 4:24-CV-04064).

Olage's arguments for recusal are insufficient for three reasons. First, an alleged delay in ruling on pending motions is not a basis for recusal. *See Anderson v. Haggar*, 4:23-CV-04024-KES, 2023 WL 5806776, at *1 (D.S.D. Aug. 22, 2023) (citations omitted). Second, *Rosado*, *Grady*, and *Merrival* do not provide a basis for recusal because the undersigned did not preside over any of the three cases. Third, while "[p]rison officials are required to permit inmates to seek the assistance of other inmates only when there are no other reasonable alternatives available to provide the inmates with meaningful access to the courts[,]" *Little v. Norris*, 787

40

F.2d 1241, 1244 (8th Cir. 1986) (citing Johnson, 393 U.S. at 488, 490), there is no independent right to a particular inmate writ writer. *See Gassler v. Rayl*, 862 F.2d 706, 707–08 (8th Cir. 1988) (citations omitted) ("There is, however, no right to be or to receive legal assistance from a jailhouse lawyer independent of the right of access to the court."); *Tighe v. Wall*, 100 F.3d 41, 43 (5th Cir. 1996) (per curiam) (citing *Smith v. Maschner*, 899 F.2d 940, 950 (10th Cir. 1990) ("Prisoners have no right to a particular prisoner's help in legal matters as long as the putative recipient's constitutional right of access to the courts is not infringed."). In both *Grady* and *Rosado*, this Court identified that "an inmate does not have a right to meet with other inmates, nor can a non-attorney inmate represent as if an attorney another inmate." *Grady v. Pennington Cnty.*, 5:23-CV-05081-RAL, 2024 WL 4973172, at *5 (D.S.D. Dec. 4, 2024) (citing *Rosado v. Wasko*, 5:23-CV-05069-RAL, 2024 WL 2105580, at *3 (D.S.D. May 10, 2024)).

The party that introduces the motion for recusal "carries a heavy burden of proof; a judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise." *Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661, 664 (8th Cir. 2003) (internal quotation omitted). "Affidavits based on conclusions, opinions, and rumors are an insufficient basis for recusal." *United States v. Walker*, 920 F.2d 513, 518 (8th Cir. 1990) (quoting *Davis v. Commissioner*, 734 F.2d 1302, 1303 (8th Cir. 1984)). Thus, Olage's unsupported, unfounded, and unrelated allegations are insufficient to show bias or prejudice by the undersigned or that the undersigned's impartiality might reasonably be questioned. Therefore, Olage's second motion to disqualify, Doc. 18, is denied.

## CONCLUSION

Accordingly, it is ORDERED

1.    That Olage's motion for leave to proceed in forma pauperis, Doc. 2, is granted.

2.    The Clerk of Court is directed to send a copy of this order to the appropriate official at Olage's institution.

3.    That the institution having custody of Olage is directed that whenever the amount in Olage's trust account, exclusive of funds available to him in his frozen account, exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to Olage's trust account shall be forwarded to the U.S. District Court Clerk's Office under to 28 U.S.C. § 1915(b)(1), until the $350 filing fee is paid.

4.    That Olage's second motion for leave to proceed in forma pauperis, Doc. 20-1, is denied as moot.

5.    That Olage's motion to file a supplemental pleading, Doc. 7, is denied as moot.

6.    That Olage's motion to supplement, Doc. 9-1, is denied.

7.    That Olage's motion for supplemental complaint, Doc. 20, is denied.

8.    That Olage's claims against Lawrence County are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

9.    That Olage's claims against all Defendants employed by the State of South Dakota in their official capacities for money damages are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

10.   That Olage's claims for injunctive and declaratory relief against SDSP employees— Ponto, Benting, Fraser, Williams, Fedt, Scott, and Moore—are dismissed without prejudice as moot under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

11.    That Olage's claims for conduct occurring in 2015 and his Fourteenth Amendment equal protection claim for conduct occurring in 2009 are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

12.    That Olage's First Amendment retaliation claims against Eilers, Sastak, Reyes, Nixon, Meyers, and Funk in their individual capacities for money damages and their official capacities for injunctive and declaratory relief survive § 1915A screening.

13.    That Olage's First Amendment right to send and receive mail and right to petition the government claims against Eilers, Doyle, and Reyes in their individual capacities for money damages and official capacities for injunctive and declaratory relief survive § 1915A screening.

14.    That Olage's Eighth Amendment deliberate indifference to serious medical needs claims for his knee and foot complications against Wasko, Reyes, Eilers, and Doyle in their individual capacities for money damages and official capacities for injunctive and declaratory relief survive § 1915A screening.

15.    That Olage's deliberate indifference to serious medical needs claims for his mental health against Eilers, Nelson, Nixon, Reyes, Wasko, Pirraglia, Doyle, Carda, and Cook in their individual capacities for money damages and official capacities for injunctive and declaratory relief and Ponto, Fraser, Williams, Fedt, Scott, and Moore in only their individual capacities for money damages survive § 1915A screening.

16.    That Olage's Fourteenth Amendment equal protection claims against Wasko, Reyes, and Eilers in their individual capacities for money damages and their official capacities for injunctive and declaratory relief survive § 1915A screening.

17.    That Olage's remaining claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

18.    That Olage's motion for appointment of counsel, Doc. 12, is denied.

19.    That Olage's motion for a temporary restraining order, Doc. 16, is denied.

20.    That Olage's second motion to disqualify, Doc. 18, is denied.

21.    That the Clerk shall send blank summons forms and United States Marshals Service Forms (Form USM-285) to Olage so that he may complete the form to cause the complaint to be served upon Defendants Wasko, Reyes, Eilers, Doyle, Nelson, Carda, Nixon, Ponto, Fraser, Williams, Cook, Fedt, Scott, Moore, Meyers, Funk, Pirraglia, and Sastak.

22.    That Olage shall complete and send the Clerk of Court a separate summons and USM-285 form for each Defendant within **thirty days from the date of this Court's screening order**. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed.

23.    That the United States Marshals Service shall serve the completed summonses, together with a copy of the amended complaint and its attachments, Docs. 15 and 15-1, and this order upon the Defendants.

24.    That Defendants serve and file an answer or responsive pleading to the complaint on or before 21 days following the date of service or 60 days if the Defendant falls under Fed. R. Civ. P. 12(a)(2) or (3).

25.    That Olage keep the Court informed of his current address at all times. All parties

are bound by the Federal Rules of Civil Procedure and by this Court's Civil Local

Rules while this case is pending.

DATED March 27, 2025.

BY THE COURT:

Lawrence L. Piersol
United States District Judge